IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TRUDIE FLORA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 05-4244-CV-C-NKL |
| | ) |
| MONITEAU COUNTY, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Former Moniteau County jailer Lyle Gilbert sexually assaulted Plaintiffs Trudie Flora, Tricia Strange and Crystal Parson during their incarceration in the Moniteau County Jail.[1] In response, Plaintiffs sued Sheriff Kenny Jones, Chief Jailer Norman Potter and Gilbert in their individual and official capacities. They also sued Moniteau County.

Plaintiffs assert a total of twenty-seven counts against the Defendants. Plaintiffs seek relief under 42 U.S.C. § 1983 against all four Defendants in fifteen of their counts. Plaintiffs seek relief under state negligence law against all four Defendants in three counts, against Sheriff Jones and Chief Jailer Potter in three counts, and against Moniteau County in three counts. Finally, Plaintiffs seek relief for assault and battery against only

---

[1] Gilbert denies sexually assaulting the Plaintiffs. However, in deciding a summary judgment motion, the Court is required by law to view the facts in the light most favorable to the non-moving party.

1

Gilbert in three counts.

Pending before the Court is a Motion for Complete Summary Judgment [Doc. # 64] filed by Defendants Moniteau County, Sheriff Jones, and Chief Jailer Potter (collectively, "the Department"). For the reasons set forth below, this Motion will be granted.[2]

## I.  Factual Background[3]

Between August 1, 2004 and October 1, 2004, Lyle Gilbert sexually assaulted Crystal Parson and Tricia Strange. On October 2, 2004, Gilbert raped Trudie Flora. The next day, Sheriff Jones discharged Gilbert, who was subsequently arrested for unlawful sexual conduct with an inmate.

### A.  The Department's Hiring, Training and Supervision Policies

The Moniteau County Sheriff's Department is a small governmental unit. Sheriff Jones or Chief Deputy Buerke interviewed all new hires, but Sheriff Jones alone made all hiring decisions and set the hiring guidelines.

Gilbert expressed interest in a job with the Department several times, but Sheriff Jones knew that Gilbert was not certified through the Missouri State Peace Officer Training Program ("POST") and Chief Deputy Buerke told Gilbert that he had to be

---

[2] The Department's Motion was submitted on behalf of Moniteau County, Sheriff Jones and Chief Jailer Potter, but not on behalf of Gilbert. Therefore, Plaintiffs' claims against Gilbert survive this Order.

[3] This section includes disputed and undisputed material facts. Where facts are disputed, the Court views the facts in the light most favorable to the Plaintiffs, the non-moving party.

POST certified in Missouri before he could be hired. Though the jailer position did not require POST certification, Sheriff Jones required it of Gilbert because he did not know his background and because Gilbert was to be hired as a deputy. Gilbert subsequently submitted a forged POST certificate, and Sheriff Jones hired him. Sheriff Jones did not know that Gilbert's POST certificate was fake; the Department had no system in place for confirming a certificate's validity.[4] Chief Deputy Buerke fingerprinted and ran a criminal background check on Gilbert prior to hiring him. The results of the background check were negative.

Sheriff Jones and Chief Deputy Buerke were responsible for checking an applicant's references and prior employment. Though the standard practice was to check prior employers and references, some employees references were never checked and no system was in place for documenting that references or prior employment had been checked. Chief Deputy Buerke testified that he would use his own discretion as to whether to check an applicant's references. Gilbert's prior employment was never confirmed and his references were not checked.

There is no evidence in the record that Gilbert received law enforcement training after he was hired. However, a POST certified officer has received thorough law enforcement training, including how to handle a firearm. The Department had no system for reviewing Gilbert's or any other employee's work. The Sheriff's Department required

---

[4] Sheriff Jones learned that Gilbert's POST certificate was fake when he reported Gilbert's discharge to the officials administering the POST program.

3

new employees to review its manual of procedures and to have 40 hours' training for their job. Gilbert did not review the manual and did not get 40 hours of training.

Gilbert worked the night shift at the jail alone. Sheriff Jones believed that one jailer was sufficient on the night shift because the facility was small.

### B. The Department's Knowledge of Gilbert's Misconduct

Inmates were allowed to ask for a grievance form on which to write any complaints. The form was then placed in the inmate's file and reviewed by Chief Deputy Buerke and Chief Jailer Potter. Prior to Flora reporting Gilbert's sexual misconduct on the night of October 2, 2004, the Department had no actual knowledge that Gilbert was a danger to inmates.

Chief Jailer Potter told Gilbert to stay away from the women's cell and had twice reprimanded him for entering the women's cell.[5] Though he reprimanded Gilbert, Chief Jailer Potter did not report Gilbert or increase his supervision. In addition, Chief Deputy Buerke once told Gilbert that he would lose his job if he did not stay away from the women's cell. Until the night of Flora's rape, however, Sheriff Jones had received no information that Gilbert behaved inappropriately toward female inmates in any way. Sheriff Jones is unaware of any allegation that any other jailer sexually assaulted an inmate in the jail from 1996 until he left office in 2004.

---

[5] During the fall of 2004, the Department allowed female inmates in its jail for short periods of time, but maintained a policy of housing female inmates apart from male inmates and not housing female inmates overnight.

4

After Flora's rape, Gilbert never returned to the jail except as an inmate.

## II. Discussion

### A. Plaintiffs' Section 1983 Claims

To prevail on their section 1983 claims against the Department Plaintiffs must establish that a policy, custom or practice resulted in a violation of a constitutional right. *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978) (defining standard to be applied in section 1983 cases against municipalities); *Ware v. Jackson County, Missouri*, 150 F.3d 873, 880 (1998) (applying *Monell* standard in suit against county). Additionally, Plaintiffs must show a direct causal link between the Department's policy or custom and the constitutional deprivation of which they complain. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Plaintiffs assert that the Department's policy of "[hiring] without prior employment confirmation, [deputizing] an employee without training, [and failing] to train and supervise employees" was "the moving force behind the violation of Plaintiffs' constitutional rights." [Opp. at 4]. Alternatively, Plaintiffs allege that the Department had a practice and custom of hiring jailers without confirming receipt of law enforcement training.

The terms "policy" and "custom" may not be used interchangeably when conducting a *Monell* analysis. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A "policy" may be "an official policy, a deliberate choice of a guiding principle or procedure made by the [government] official who has final authority regarding such matters." *Id*. Alternatively, Plaintiffs' may establish the existence of a "custom" or

5

"practice" under *Monell* by showing the following:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) That the custom was the moving force behind the constitutional violation.

*Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (1990).

### 1. The Department's Liability for its Hiring Practices and Specific Decision to Hire Gilbert

Plaintiffs have submitted insufficient evidence from which a reasonable juror could conclude that the Department had a policy of hiring employees without confirming the employee's prior employment or background. The Chief Deputy would conduct background checks as he deemed appropriate based on the specific circumstances of the applicant. That cannot be described as a policy to do no background checks. However, even if Plaintiffs had established that such a policy existed, Plaintiffs have not established that the policy directly caused the violation of Plaintiffs' constitutional rights.

In *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 411, 117 S. Ct. 1382 (1997) the United States Supreme Court discussed what had to be shown to establish section 1983 liability for a single hiring decision. The Supreme Court said that there would be liability only if it is shown that an adequate review of an applicant's background would have shown a reasonable policymaker that the plainly obvious consequence of hiring the applicant would be the deprivation of a third party's federally protected rights of the sort particularly alleged by Plaintiffs. *Id.*, 520

U.S. at 411-12; *Morris v. Crawford County*, 299 F.3d 919, 922 (8th Cir. 2002) (noting that the court must find that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff" in order for single hire liability to attach).

Plaintiffs argue that, had Sheriff Jones or Chief Deputy Buerke checked Gilbert's prior employment, they "would have learned that the application contained false statements and that Gilbert was not certified as a peace officer." [Opp. at 8]. Plaintiffs contend that uncovering Gilbert's deception "would have made it plainly obvious to [the Department] that Gilbert would act in violation of the Plaintiffs' constitutional rights." [Opp. at 8]. However, as the Supreme Court indicated in *Brown*, proving but-for causation is not enough. Proof of a generalized risk of harm is not enough. To establish liability for a single hiring decision, the Plaintiffs must show that a governmental official was on notice that the job applicant posed a substantial risk of injuring an inmate in the way the Plaintiffs were ultimately injured. It is a daunting burden of proof and Plaintiffs have failed to satisfy their burden because they have failed to show that a background check would have revealed that Gilbert had previously engaged in sexual misconduct with women. *See Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998); *Gros v. City of Grand Prairie*, 209 F.3d 431, 433-34 (5th Cir. 2000); *Hardeman v. Kerr County, Texas*, 2006 WL 503846 (W.D. Tex. 2006).[6]

---

[6]In these cases, the county officials had better employment practices than did the Department. However, all these cases were decided on the lack of a causal link, not the thoroughness of the hiring process.

7

Case 2:05-cv-04244-WAK   Document 87   Filed 09/19/2006   Page 7 of 17

Plaintiffs argue that *Brown* is not applicable to this case because the Department has a history of poor hiring practices. It is not clear to the Court whether the discussion in *Brown* about causation is limited to single hire cases or is applicable to all cases where a § 1983 plaintiff is claiming liability based on hiring practices. It is likely the latter. However, if the former, Plaintiffs have not even shown a pattern of poor hiring decisions that resulted in the deprivation of the constitutional rights of jail inmates, male or female. Merely showing a pattern of poor or abysmal hiring practices is not enough to establish § 1983 liability.

Thus, even if Plaintiffs had established that the Department maintained a policy of hiring employees without confirming the employee's prior employment, Plaintiffs have failed to create a genuine issue as to whether the Department's hiring policy caused the violation of Plaintiffs' constitutional rights.

### 2. The Department's Liability for Inadequately Training Gilbert

For Moniteau County to be liable under a "failure to train" theory, Plaintiffs must show that any such failure to train evidences a deliberate indifference to the rights of Plaintiffs. *City of Canton*, 489 U.S. at 392 (noting that permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities). Plaintiffs may establish the Department's deliberate indifference to their constitutional rights by showing that (1) the Department was on notice that its training was inadequate and (2) the violation of constitutional rights was the likely result of the Department's inadequate

training.

Plaintiffs may show the Department had notice that its training was inadequate by submitting evidence that the Department's failure to train its jailers was so likely to result in a violation of Plaintiffs' constitutional rights that the need for training was patently obvious. *City of Canton*, 489 U.S. at 390; *S.J.*, 294 F.3d at 1029. Or, Plaintiffs may show the Department had notice by submitting evidence that "a pattern of misconduct indicates that [the Department's] responses to a regularly recurring situation [were] insufficient to protect [Plaintiffs'] constitutional rights." *S.J. v. Kansas City Missouri Pub. Sch. Dist.*, 294 F.3d 1025, 1029 (8th Cir. 2002).

Plaintiffs argue that the need for training and supervising Gilbert was patently obvious because the Department's policy of allowing male jailers to supervise female inmates "created a potential high risk for the development of sexual relationships or occurrences of sexual assault between jailers and inmates." [Opp. at 15]. To support their argument, Plaintiffs rely on *Tennessee v. Gardner*, 471 U.S. 1, 105 S. Ct. 1694 (1985) (inadequate training on the use of deadly force constituted deliberate indifference where policy makers knew that armed officers would be required to arrest fleeing felons); and *Young v. City of Providence*, 404 F.3d 4, 29 (1st Cir. 2005) (inadequate training constituted deliberate indifference where officers were required to be armed while off duty and there was a high risk of friendly fire shooting based on misidentification).

*Gardner* and *Young* are not analogous to the case at hand. While the need to train officers on how and when to use their guns is patently obvious, the need to train a jailer

9

not to sexually assault an inmate is not. It can fairly be assumed that all jailers know that sexual assaults on inmates are not permitted and there is no evidence in this case that Gilbert was unaware that felonies were not to be committed at the jail. *See Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) ("[W]e cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."); *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) (training claim failed because additional or different training would be unlikely to stop jailer from sexually assaulting inmates).

Alternatively, Plaintiffs have failed to show that the Department was aware of any pattern of misconduct by Gilbert or other jailers. There is no evidence that any inmate submitted grievance forms complaining about Gilbert's conduct. Furthermore, Sheriff Jones was not aware of any acts of sexual assault against female inmates other than the one reported by Flora against Gilbert for which Gilbert's employment was terminated. Plaintiffs argue the warnings given to Gilbert to stay away from the female inmates and their cell prove that the Department had notice of Gilbert's actions. However, the warnings given to Gilbert are insufficient to show that the Department was on notice that Gilbert may sexually assault an inmate. *S.J.*, 294 F.3d at 1028-29 (prior complaint of inappropriate sexual comments insufficient to put school district on notice of volunteer's propensity for molesting children). *Rogers v. City of Little Rock*, 152 F.3d 790 (8th Cir. 1998) (city was not on notice that police would rape civilian even though he was suspended for having wrongful intercourse with fellow cadet at training academy);

10

*Andrews*, 98 F.3d at 1076 (Police officer had two previous complaints against him, one for breaking into home of minor girl and another for making sexually suggestive comments to a female driver he had detained. This was insufficient notice to the city that he posed a risk of raping a minor child.).

    **3.  The Department's Liability for Inadequately Supervising Gilbert**

In order to establish liability against the Department for failing to supervise Gilbert, Plaintiffs must show that the Department: (1) received notice of a pattern of unconstitutional acts committed by Gilbert; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action against Gilbert; and (4) that such failure proximately caused Plaintiffs' injuries. *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (citing *Jane Doe A.*, 901 F.2d at 645).

As noted in the previous sections, Plaintiffs have not shown that the Department had notice that Gilbert or others were sexually assaulting inmates and was deliberately indifferent to the misconduct. Therefore, Plaintiffs may not maintain a section 1983 cause of action based on the Department's supervision of Gilbert.

    **4.  The Department's Liability for its Staffing and Administrative Decisions**

In order to establish liability against the Department for housing female inmates or not adequately staffing the jail, Plaintiffs must show that the Department's practices

11

constitute deliberate indifference to Plaintiffs' constitutional rights.[7] *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (officials' decision not to improve conditions at correctional facility must rise to deliberate indifference standard for Eighth Amendment failure-to-protect claim to be viable). The jail manual dictates that at least one jailer must be on duty during the night shift. Sheriff Jones determined that, because the jail is small, one jailer was sufficient. Plaintiffs have submitted no evidence that Sheriff Jones' decision to allow a single jailer (Gilbert) to supervise the inmates was based upon anything other than the size of the jail. Moreover, as previously discussed, Plaintiffs have submitted no evidence that Sheriff Jones had notice that Gilbert may sexually assault an inmate under his supervision. During the relevant time period, the Department's policy instructed that female inmates may be housed for short periods of time, but may not be housed overnight. Female inmates were housed in a women's cell, which is separate from the male inmates. Plaintiffs have not submitted evidence that the Department knew of dangers to the women. In fact, Plaintiffs have submitted no evidence that simply housing female inmates at the jail evidences the Department's deliberate indifference to Plaintiffs' rights. Accordingly, Plaintiffs have failed to show a genuine issue as to whether the Department was deliberately indifferent to Plaintiffs' rights with respect to its jail staffing and housing decisions.

---

[7]Plaintiffs discuss these issues throughout the argument portion of their brief. It is not clear what theory they are relying on to establish section 1983 liability. Because deliberate indifference is the *sine qua non* of county or municipal liability, based on these allegations, at a minimum, Plaintiffs must establish deliberate indifference.

12

Because Plaintiffs have failed to present evidence that the Department's hiring, training, supervision or administrative policies were constitutionally deficient and caused injury to the Plaintiffs, the Department's Motion for Summary Judgment is granted as to Counts I - V, Counts X - XIV, and Counts XIX - XXIII.

**B.     Moniteau County, Sheriff Jones and Chief Jailer Potter's Immunity Defenses**

    **1.     Qualified Immunity Under Section 1983**

Qualified immunity shields a government official from liability under 42 U.S.C. § 1983 unless the official's conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *Vaughn v. Greene County, Arkansas*, 438 F.3d 845, 849-50 (8th Cir. 2006) (citation omitted). The Court conducts a two-step analysis to determine whether Sheriff Jones and Chief Jailer Potter are entitled to qualified immunity. First, the Court, after viewing the facts in the light most favorable to the Plaintiff, must determine whether Plaintiffs' constitutional rights were violated. If they were, then the second step requires the Court to determine whether Plaintiffs' rights were clearly established at the time of the violation such that a reasonable sheriff or chief jailer would have understood that his conduct was unlawful under the circumstances. *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151 (2001).

In this case, Plaintiffs' constitutional rights were not violated by the Department. But, even if Plaintiffs' rights were violated, Sheriff Jones and Chief Jailer Potter are entitled to qualified immunity. Given the law in this area, no reasonable sheriff or jailer would have understood that they should have been on notice that Gilbert posed a risk of

13

sexually assaulting female inmates.

### 2. Plaintiffs' State Claims - Official Immunity

Missouri's official immunity doctrine shields a public officer from liability when his discretionary act or omission injures a third party so long as the official was acting within the scope of his authority. *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985); *Betts-Lucas v. Hartmann*, 87 S.W.3d 310, 327 (Mo. Ct. App. 2002) ("The doctrine of official immunity insulates state employees from suit in their individual capacities when liability arises from discretionary acts or omissions of a state employee."). But, no official immunity attaches if the official was acting in a ministerial capacity at the time of the injurious act. *Id.*

Sheriff Jones and Chief Jailer Potter are entitled to official immunity under Missouri law because the acts for which Plaintiffs wish to hold them to account are all discretionary acts. The hiring, training, and supervising of employees, the evaluation and investigation of events within the jail, and the assigning of inmates to particular cells are all discretionary acts for which Sheriff Jones and Chief Jailer Potter are entitled official immunity. *See, e.g., Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. banc. 1996) (noting that discretionary acts require the exercise of professional judgment); *Gavan v. Madison Memorial Hospital*, 700 S.W.2d 124, 128 (Mo. App. 1985) (noting that hiring is a discretionary function).

Plaintiffs argue that Sheriff Jones is not entitled to official immunity because he failed to perform a ministerial duty in violation of Mo. Rev. Stat. 590.070.1. Plaintiffs'

14

assertion is neither supported by the evidence, nor legally relevant to the question of whether Sheriff Jones is entitled to official immunity under Missouri law. Accordingly, summary judgment is granted to Sheriff Jones and Chief Jailer Potter in their individual capacity as to Counts VII, VIII, XVI, XVII, XXV and XXVI.

### 3. Sovereign Immunity Under Missouri Law

The Department argues that sovereign immunity shields it from suit on Plaintiffs' state law negligence claims. Plaintiffs counter that the Moniteau County Jail was so dangerously antiquated as to allow suit against the Department pursuant to the dangerous condition exception to sovereign immunity.

The sovereign may not be sued without its consent. *McNeill Trucking Co. v. Missouri State Hwy. and Transp. Comm'n*, 35 S.W.3d 846, 848 (Mo. banc 2001). Furthermore, unless sovereign immunity is waived, employees may not be sued in their official capacity because "such suits are essentially direct claims against the state." *Betts-Lucas*, 87 S.W.3d at 327 (citation omitted). Missouri's sovereign immunity statute waives sovereign immunity to allow recovery of compensatory damages for injuries sustained either from the negligent use of motor vehicles or because a dangerous condition exists on public property. *McNeill Trucking*, 35 S.W.3d at 848.

Plaintiffs state a claim for relief under the dangerous condition exception to sovereign immunity if they establish that (1) a dangerous condition existed at the jail; (2) their injury directly resulted from the jail's dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk that Plaintiffs' would be harmed in the

15

manner in which they were harmed; and (4) that a jail employee negligently created the condition or that the Department had actual or constructive notice of the dangerous condition. *Farrell v. St. Louis County*, 190 S.W.3d 401, 403 (Mo. Ct. App. 2006). To constitute a dangerous condition, however, the public entity's property must contain a physical defect. *Kanagawa*, 685 S.W.2d at 835.

In this case, Plaintiffs have not established that the Moniteau County Jail was in a dangerous condition, or that the dangerous condition as alleged by Plaintiffs actually was the proximate cause of their injuries. Plaintiffs allege that Gilbert's actions were facilitated by the antiquated nature of the jail. In reality, while the jail is the location where Plaintiffs' injuries were sustained, Plaintiffs cannot reasonably claim that their injuries directly resulted from the physical structure which is the jail itself. Accordingly, sovereign immunity has not been waived, and summary judgment is granted to Moniteau County as to Counts VI, VII, XV, XVI, XXIV and XXV. Also, summary judgment is granted to Sheriff Jones and Chief Jailer Potter, in their official capacities, as to Counts VII, VIII, XVI, XVII, XXV and XXVI.

### III. Conclusion

Accordingly, it is hereby

(1) ORDERED that the Defendants' Motion for Complete Summary Judgment [Doc. # 64] is GRANTED.

16

                                                s/ Nanette K. Laughrey  
                                                NANETTE K. LAUGHREY  
                                                United States District Judge

DATE: September 19, 2006  
Jefferson City, Missouri